NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYSTONE MOUNTAIN LAKES REGIONAL COUNCIL OF CARPENTERS, *as successor to* NORTHEAST REGIONAL COUNCIL OF CARPENTERS *and* NORTHEAST CARPENTERS FUNDS AND THE TRUSTEES THEREOF,<br><br>Petitioner,<br><br>v.<br><br>ANGELO'S CONSTRUCTION COMPANY, *et al.*,<br><br>Respondents. | Civil Action No.: 18-11313 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a motion filed by Petitioner Keystone Mountain Lakes Regional Council of Carpenters, as successor to Northeast Regional Council of Carpenters ("the Union") and Northeast Carpenters Funds and the Trustees Thereof ("the Funds"), to Confirm the Arbitration Award and Entry of Judgment made on July 3, 2017. (ECF No. 2). Respondents Angelo's Construction Company ("Angelo's") and Llanos Drywall, LLC ("Llanos") filed opposition, and Petitioner has replied thereto. (ECF Nos. 12, 13). With the permission of the Court, Respondents have also filed a sur-reply. (ECF No. 16). The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Petitioner's Motion to Confirm the Arbitration Award.

# I. BACKGROUND

The Union and Respondents are parties to a Project Labor Agreement ("PLA") governing the terms for construction work performed at a construction project in Jersey City, New Jersey. (ECF No. 1 ("Pet.") ¶ 7). The Union and Respondent Angelo's are also parties to a state wide collective bargaining agreement ("CBA") with the Building Contractors Association of New Jersey and the Drywall & Interior Systems Contractors Association of New Jersey, to which Respondent Llanos is expressly bound because of an executed short form agreement. (Pet. ¶ 6). The PLA incorporates the CBA and supersedes any conflicting terms. (ECF No. 1-4 at 2).

Article 11, Section 1 of the PLA and Article XXIV, Paragraph 5 of the CBA require the payment of fringe benefits to "the various funds." (ECF No. 1-3 at 29; ECF No. 1-4 at 9). As stated in Article 11, Section 2 of the PLA, any "[d]elinquency disputes between a benefit fund and a contractor that are related to the Project shall be submitted to binding arbitration," and an award shall be rendered within three days of an arbitration hearing. (ECF No. 1-4 at 9). Pursuant to Article 9 of the PLA ("the PLA's Grievance Procedure"), almost any dispute "involving the interpretation or application of [the PLA] . . . shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below." (*Id.* at 6). At Step 1(b) of the PLA's Grievance Procedure, any dispute between signatories shall be put into writing and proceed to Step 2 if, after the parties confer, a settlement cannot be reached within 14 days. (*Id.* at 7). At Step 2, the local union, the involved contractor, and the general contractor, among others, shall meet "within 14 calendar days of service of the written grievance to arrive at a satisfactory settlement." (*Id.*). If the grievance is not resolved, any of the parties may submit the unresolved grievance at Step 3 to Arbitrator J.J. Pierson, Esq. within 21 days of the initial Step 2 meeting.

(*Id.*). "The Arbitrator shall have authority to make decisions only on the issues presented to him." (*Id.*).

On March 30, 2017, the Arbitrator held an arbitration hearing in regard to the Union and Funds' dispute against Respondents. (Pet. ¶ 13). Specifically, the Union and Funds alleged that Respondent Llanos, a subcontractor of Respondent Angelo's, failed to remit fringe benefit contributions to the Funds. (Pet. ¶¶ 9, 12–13). The issue submitted to the Arbitrator was whether Respondents violated the PLA and CBA based on their failure to remit fringe benefit contributions, and "[i]f so, what shall be the remedy?" (Pet. ¶ 12; *see also* ECF No. 1-1 at 1 (stating same)). Respondents were not present at the hearing, even though they received proper notice at all three steps of the PLA's Grievance Procedure, including notice of the March 30, 2017 Hearing. (Pet. ¶ 10; *see also* ECF No. 1-1 at 1 n.2 (Arbitrator noting same)).

At the March 30, 2017 Hearing, the Union presented the testimony of a collector employed by the Funds, who testified that he met with Respondent Angelo's principal, Mr. Angelo Ramos, pursuant to Step 1 of the PLA's Grievance Procedure, and discussed a settlement for Respondent Llanos' delinquency. (ECF No. 1-1 at 2–3). According to the collector's testimony, Mr. Ramos said he would pay Respondent Llanos' delinquency by giving the Union and Funds $80,000 the following day and paying the remainder by way of a 12 month payment plan. (*Id.* at 3). Mr. Ramos' representation was confirmed at the March 30, 2017 Hearing by the testimony of another witness and the representation and certification of counsel for the Union and Funds. (*Id.* at 4). The record before the Arbitrator also showed that Mr. Ramos made a payment of $80,000 to the Funds the day after the meeting, and that lawyers for the Funds and Respondent Angelo's discussed Mr. Ramos' agreement "to pay the delinquency to the point of the settlement but not for post-settlement delinquencies." (*Id.*). The record further demonstrated that, as of the date of the March

3

30, 2017 Hearing, Respondent Angelo's had not remitted the remainder of the delinquent fringe benefit balance as it had promised, which amounted to approximately $150,294.17. (*Id.*).

Based on this evidence, the Arbitrator issued an arbitration award on July 3, 2017, finding that: (i) Respondent Angelo's representation to pay the delinquent fringe benefit balance "was made in the context of the PLA contractual grievance procedure," thus binding the parties to settlement; (ii) the Union and Funds detrimentally relied on "[Respondent Angelo's] representation that it would remit payment of the delinquency"; and (iii) Respondent Angelo's violated the PLA and CBA by failing to remit its agreed upon payments to the Funds. (*Id.* at 4–5). In the July 3, 2017 Arbitration Award, the Arbitrator awarded the following:

> 1. Pursuant to the [PLA] and as set forth in the record of the fringe benefit delinquency accrued by [Respondent Llanos] arising on the . . . project, [Respondent Angelo's] shall be directed to remit payment to [the Funds], in the amount of $150,294.17, plus interest in the amount of $12,119.72 (between October 26, 2016 and the present date) representing delinquent fringe benefit contributions on behalf of Carpenters performing work on the . . . project.
>
> 2. In accordance with the PLA and the [CBA], [Respondent Angelo's] shall further be liable to [the Funds] for liquidated damages in the amount of $30,058.83.
>
> 3. [Respondent Angelo's] shall be liable to [the Funds] in the total amount of $192,472.72, as specifically set forth in paragraphs 1-2 above. A check shall be made payable to [the Funds] . . . .
>
> 4. [Respondents] shall reimburse [the Union] for the Arbitrator's fee, in the amount of $4,00.00. Payment of the Arbitrator's fee by [sic] shall be deemed an obligation imposed by this Award under Article 9, Section 1. Step 3(b) of the PLA.

(*Id.* at 5 (emphasis omitted)).

Petitioner alleges that Respondents have not complied with the July 3, 2017 Arbitration Award. (Pet. ¶ 19). Petitioner subsequently filed this petition on July 2, 2018, requesting that the

Court confirm the July 3, 2017 Arbitration Award, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9, 13 ("the FAA"). (*See generally* Pet.).

## II. ARGUMENTS & ANALYSIS

### A. Legal Standard

The United States Supreme Court has explained that a court's role in reviewing an arbitration award is extremely limited. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960); *see also Jones v. Intarome Fragrance Corp.*, Civil Action No. 04-5625, 2007 WL 1296656, at *3 (D.N.J. Apr. 27, 2007) ("The party moving to vacate an arbitration award bears the burden of proof") (citation omitted). A court may not vacate an arbitration award merely because it views the merits of the claims differently or because a court feels that the arbitrator made a factual or legal error. *See, e.g., Major League Umpires Ass'n v. Am. League of Professional Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004). Instead, arbitration awards are entitled to a strong presumption of correctness which can only be overcome in limited circumstances, as outlined in section 10 of the FAA and in common law principles adopted by the Third Circuit. *See Major League Umpires Ass'n*, 357 F.3d at 280–81.

Under the FAA, some circumstances in which a court may vacate an arbitration award include: (i) where the award was procured by corruption or fraud; (ii) where the arbitrator exceeded his or her powers; or (iii) where the arbitrator engaged in misconduct that prejudiced one of the parties. 9 U.S.C. § 10. Another circumstance recognized by the Third Circuit in which a court may vacate an arbitration award is when said award "cannot in any rational way be derived from the collective bargaining agreement." *United Steelworkers of Am., AFL-CIO v. Am. Smelting & Refining Co.*, 648 F.2d 863, 867 (3d Cir. 1981). Therefore, a court will generally uphold an

arbitration award so long as it "draws its essence from" the underlying agreement. *Major League Umpires Ass'n*, 357 F.3d at 280 (citations omitted).

**B. Respondents' Arguments**

Respondents raise two arguments in opposition to this Court granting Petitioner's Motion: (i) the July 3, 2017 Arbitration Award is void because an opinion of the Hon. Susan D. Wigenton, U.S.D.J., found the Jersey City tax-abated ordinance which promulgated the PLA ("the PLA Ordinance") to be void; and (ii) the July 3, 2017 Arbitration Award did not draw its essence and findings from the PLA or the evidence in the record. (*See generally* ECF No. 12). As shown below, the Court is not persuaded by either argument.

1. <u>Whether the Arbitration Award is Void</u>

The first issue before the Court is whether the PLA and July 3, 2017 Arbitration Award are void *ab initio* based on the June 15, 2017 Opinion and Order of Judge Wigenton, which found that the PLA Ordinance was preempted by the National Labor Relations Act. *See Associated Builders & Contractors, Inc. v. City of Jersey City, N.J.*, Civil Action No: 14-5445, 2017 WL 2616889, at *2–3 (D.N.J. June 15, 2017). While it is true that Judge Wigenton found the PLA Ordinance to be void, her Honor later clarified in a November 29, 2017 Opinion that the June 15, 2017 Opinion was "not retroactive" and that "PLAs for tax-abated projects completed prior to [the June 15, 2017 Opinion] will remain undisturbed." *Associated Builders & Contractors, Inc. v. City of Jersey City, N.J.*, Civil Action No: 14-5445, 2017 WL 5951582, at *3 (D.N.J. Nov. 29, 2017). The November 29, 2017 Opinion further stated that, "[w]ith respect to the PLAs on the approximately eight (8), active, tax-abated projects, [including the project relevant to this action, (*see* ECF No. 13 at 3 n.1),] this Court holds that the ruling [in the June 15, 2017 Opinion] does not apply to completed components of those projects." *Associated Builders & Contractors, Inc.*, 2017 WL 5951582, at

*3. The reasoning of the November 29, 2017 Opinion was recently applied to a case substantially similar to the one before this Court, in which the Hon. Esther Salas, U.S.D.J., also declined to apply the June 15, 2017 Opinion to projects or work completed prior to said Opinion being issued. (ECF No. 14-1 at 4:20–5:8).

Respondents argue that Judge Wigenton and Judge Salas' Opinions "overstepped the court's authority," and that the June 15, 2017 Opinion must be applied retroactively to bar this action. (ECF No. 16 at 1–4). However, as clarified in the November 29, 2017 Opinion, the initial June 15, 2017 Opinion only voided work that was not yet completed at the time said Opinion was issued, and therefore there is no initial ruling that this Court could retroactively apply to void completed projects or completed work on non-completed projects. *See Swietlowich v. Bucks Cty.*, 610 F.2d 1157, 1164 (3d Cir. 1979) (explaining that a trial judge has the discretion to clarify or correct a previous ruling, and should exercise said discretion if the previous ruling "might lead to an unjust result."). Unlike the cases cited by Respondents, which involved a prior opinion from a different court directly applying to a pending action, *see, e.g., Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97–99 (1993); *Olympic Forest Coal. v. U.S. Forest Serv.*, 556 F. Supp. 2d 1198, 1205 (W.D. Wash. 2008), Respondents here are asking the Court to rewrite the June 15, 2017 Opinion to apply more broadly than it was intended, which it will not do. Instead, the Court follows the reasoning of the other Judges in this District, and declines to extend Judge Wigenton's initial Opinion to void work completed prior to June 15, 2017. Considering the work underlying Petitioner's grievance was completed prior to the June 15, 2017 Opinion, (*see* ECF No. 13 at 1 (stating same)), and the June 15, 2017 Opinion only voids work completed after it was issued, the Court finds that the July 3, 2017 Arbitration Award is not void.

2. Whether the Arbitration Award is Grounded in the PLA and Record

Respondents' argument then turns to the merits of the July 3, 2017 Arbitration Award. Specifically, Respondents argue that the July 3, 2017 Arbitration Award was not based on the PLA and evidence in the record, in part because the Arbitrator allegedly misquoted Article 11 Section 2 of the PLA as containing nonexistent language that a higher-tier contractor can be liable for its subcontractor. (ECF No. 12 at 4). Respondents also claim that the Arbitrator could not have found a breach of the PLA in the absence of "evidence of hours worked on the job and an employer's failure to remit contributions" being presented. (*Id.* at 5). Finally, Respondents argue that the Arbitration Award was only supposed to be retroactive up to 60 days prior to the underlying grievance whereas this award went back seven months, and that the Arbitrator was supposed to issue his decision within three days but did not do so for three months. (*See id.* at 4–5).

The Court is not persuaded by these arguments, as they fail to account for the fact that the Arbitrator's finding was not based solely on the language of the PLA, but rather on Respondent Angelo's representation that it would pay Respondent Llanos' delinquency and the Union and Funds' detrimental reliance on said representation. (*See* ECF No. 1-1 at 4). Because Respondent Angelo's representation was made during a meeting at Step 1 of the PLA's Grievance Procedure, and was part of the grievance submitted to the Arbitrator, the dispute and findings in the July 3, 2017 Arbitration Award were placed squarely within the PLA and the jurisdiction of the Arbitrator. *See Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1989) (explaining that the Court must look to both the language of the contract and the issue submitted in determining an arbitrator's authority); *see also GK MGT Inc. v. Local 274, Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 930 F.2d 301, 304 (3d Cir. 1991) (stating that an arbitrator can "take cognizance of contract principles."). Any other errors or omissions allegedly committed by the Arbitrator are

not sufficient under the standard articulated above, *supra* Section II.A, for the Court to vacate an arbitration award. *See Major League Umpires Ass'n*, 357 F.3d at 280 (explaining that a legal or factual error is not enough to vacate an arbitration award) (citations omitted). Therefore, the Court rejects Respondents' arguments and confirms the July 3, 2017 Arbitration Award.

### III. <u>CONCLUSION</u>

For the aforementioned reasons, the Court hereby grants Petitioner's Motion to Confirm the July 3, 2017 Arbitration Award. An appropriate Order follows this Opinion.


Dated: October  15 , 2018.

                                    JOSE L. LINARES
                                    Chief Judge, United States District Court